SUCCESSION OF VALDÉS, PLAINTIFF AND APPELLEE, *v.* ACEVEDO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Mayagüez in an Action of Debt.

No. 1342.—Decided April 25, 1916.

SURETY—SPECIFIC GUARANTY—AGRICULTURAL FINANCING.—According to sections 1250 and 1278 of the Civil Code, a guaranty given by a surety for the payment of a specified amount to be advanced to his principal for agricultural purposes and also for the performance of other obligations undertaken in the contract, is limited to the money advanced for agricultural purposes and does not render the surety liable for sums in excess of that amount advanced to his principal for agricultural purposes.

The facts are stated in the opinion.
*Mr. Benito Forés* for the appellant.
*Mr. Leopoldo Felíu* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

On March 30, 1911, Ramón Valdés Cobián, as owner of the Central Ana María, and Rafael Ufret, Jr., entered into a contract by a private instrument, the wife of the latter, Amelia Gutiérrez, being a party thereto, the said contract to be in force until June 30, 1913, and to include the grinding seasons of 1912 and 1913, Ufret agreeing to plant and cultivate sixty *cuerdas* of sugar cane for the crop of 1911–12 and a like area for the following crops and binding himself

to sell the said sugar cane to Valdés during the grinding season from January to June, 1912, inclusive. In the same contract Valdés agreed to advance to Ufret the sum of $800 during the first year of the contract in such instalments as might be asked for by Ufret for the cultivation of the said land and for cutting, harvesting and transporting the sugar cane produced thereon, the said instalments to bear interest at 10 per cent annually from time of delivery until paid and payment thereof to be made with the proceeds of the sugar cane contracted for as far as such proceeds might go, and the remainder in cash. The debt was to be considered due from year to year at the termination of the grinding of the last sugar cane delivered by the grower and, in any event, on June 30, 1912, when the season closed, and if after striking a balance the proceeds of the sugar cane should not cover the debt, the central might suspend payment of further sums and bring an action to recover, or credit its advance account for the following season with the unpaid balance. The price of the sugar cane was fixed at the value of six pounds of sugar in the New York market during the preceding month, deducting twenty-five cents per hundredweight of sugar for freight, commission, etc., the amount to be credited each month to be determined by an accounting to be made during the first two weeks of the following month. It was agreed also that Valdés should have the right to extend the contract unless Ufret delivered sufficient cane to cover the advances made to him and the interest, which right Ufret expressly granted to Valdés and agreed to execute such documents as might be necessary. In like manner it was agreed that Ufret should deliver to Valdés any sugar cane which he might purchase from other persons under the same conditions, obligations and prices as applied to his own sugar cane under the contract and that in so far as concerned the money which Ufret might need for the purchase of such sugar cane, they would enter into a special agreement at the proper time providing what amounts should

be ·advanced by the central, how payment should be secured and made, etc.

Performance of the said contract, which in substance is as above, was guaranteed by the appellant, Ramón Acevedo, as follows:

"That, having read the same, he is informed of all the conditions of this contract and that in consideration of its being entered into by the central with Ufret, the planter, and of the former's agreement to advance to the latter the sum of $800 as agreed upon in the said contract, he binds himself and agrees to guarantee and does hereby guarantee and bind himself to respond for the payment of the said sum, with interest, as well as for the faithful and exact fulfilment of this contract and all and each of its conditions by Ufret, Jr., in favor of the said central, this guaranty to remain in force during the life of the said agreement or during such time as Ufret may be indebted to the central in any sum under the terms thereof."

On October 20 of the same year the aforesaid contracting parties amended the said contract to the effect that Valdés should advance to Ufret $800 during the year 1912–13 for the cultivation of the said sugar cane, which amount he was to deliver in instalments, it being agreed that this clause should be held and considered as supplementary to the former agreement and remain in force as one of its clauses and conditions. Ramón Acevedo was not a party to this transaction.

On February 12, 1913, the parties entered into another contract, also without the intervention of Acevedo, by which they agreed to extend the contract of March 30, 1911, for two years, beginning July 1, 1913, and including the seasons of 1913–14 and 1914–15, binding themselves to comply faithfully and precisely with the conditions of the former agreement with the following modifications: That on February 13 Valdés should pay to Ufret $400 and on the last day of February a further sum of $600 for the cultivation of the. sugar cane, subject to the conditions of the renewed agreement, and that thirty cents instead of twenty-five cents, the amount

agreed upon in the former contract, should be deducted from the price to be paid for the sugar cane.

The central opened an account with Ufret for the crop of 1911–12 which shows two debits of $400 each and others on account of the sugar cane and various credits for sugar cane delivered, and upon closing the account on June 11, 1912, a balance of $596.80 resulted against Ufret.

Another account with Ufret was opened on October 27, 1911, for the season of 1912–13 in which different amounts were debited and other amounts credited for sugar cane delivered, and a balance being struck on June 16, 1913, a debit of $1,490.65 resulted against Ufret.

Valdés having sued the spouses Ufret and Ramón Acevedo for the amounts of the said balances with interest, judgment was rendered against the said spouses and against Acevedo as surety, from which judgment the latter took the present appeal praying for a reversal of the judgment as to him on the ground that the lower court committed various errors in rendering the judgment.

In his brief the appellant contends that the trial court erred in adjudging that he, as surety, should pay the amount sued for in the complaint, because it improperly construed his guaranty for the performance of the contract of March 30, 1911, which admits of no other construction than that he guaranteed the payment of the $800 to be advanced to Ufret according to the contract for the cultivation of the crop to be ground in the year 1912, but that he did not guarantee the other $800 which by a later contract, in which he did not join, was to be advanced for cultivating and harvesting the crop of 1913, nor the amounts to be advanced to Ufret for the purchase of sugar cane from other persons, inasmuch as the manner of making these advances and guaranteeing their payment was to be provided for in another contract.

The parties to this appeal agree, and there is no doubt of it, that Acevedo guaranteed the payment of the $800 to be advanced to Ufret for agricultural purposes, for it is so

stated expressly in his guaranty, but in view of the pronouncement against the appellant in the judgment appealed from, the parties are at issue as to whether the obligation assumed by Acevedo extended beyond the $800 the payment of which he admits having guaranteed. This is really the fundamental question in this action.

As regards the amounts advanced by Valdés to Ufret for the purchase of sugar cane from other persons, it is obvious to us that their payment was not guaranteed by the appellant, inasmuch as it was stipulated in the contract that the delivery of said sums, their repayment and the manner of guaranteeing the same, should be provided for in another special agreement, and there can be no doubt as to the intention of the parties in this regard. As a matter of fact, as regards the advances the evidence does not show that the central advanced any money to Ufret for the purchase of sugar cane from others, although he did deliver sugar cane grown by others during the grinding season, or that the balance sued for and adjudged to be paid by him includes money advanced for that purpose.

But the appellant further guaranteed the faithful performance by Ufret of each and all of the conditions of the contract and bound himself to continue his guaranty so long as the contract which he had guaranteed remained in force or any amount was owing by Ufret on account of the same.

The evidence shows that the central advanced to Ufret more than the $800 expressly agreed upon in the contract for the cultivation and harvesting of the crop of 1912 and that the value of the sugar cane delivered by Ufret did not cover the various advances made to him, there resulting a balance of $596.80 against him, and that the same occurred in the 1913 crop, although in this case the balance against Ufret was much greater. Did Acevedo guarantee the payment of the sums in excess of the $800 advanced to Ufret for agricultural purposes? Let us see.

As we are going to construe the scope and extent of the

guaranty given by the appellant, it will be well to bear in mind that among the rules for interpreting contracts is that of section 1250 of the Civil Code, according to which however general the terms of the contract may be, there should not be understood as included therein things and cases different from those with regard to which the persons interested intended to contract; that contracts of guaranty being of a special nature inasmuch as the obligations are generally undertaken without compensation, they must be construed strictly and not be extended beyond their terms; and, according to section 1728 of the Civil Code, that they are not presumed, but must be express and cannot be extended beyond what is specified therein, although if they are simple or indefinite they shall include not only the principal obligation, but all its accessories. •

As this provision of the code last cited allows the guaranty to be extended not only to the principal obligation but to the accessories which are a consequence thereof, we must consider the terms of the contract of guaranty in this case in order to determine therefrom whether it is a definite or limited one, in which case it responds only for the obligation expressly secured, or whether on the contrary, its terms are general or indefinite, in which case the liability of the surety is extended also to all the obligations of the principal resulting from the guaranteed contract. In this case not only will the principal obligation be guaranteed, but also its consequences.

In order to decide this action it is necessary, therefore, to determine whether the guaranty is limited expressly to securing one or several obligations of the principal, or whether it is in terms so general that it cannot be understood as limiting the liability of the guarantor to definite obligations but also extends to the natural consequences of non-fulfilment on the part of the principal. For this purpose we must summarize the obligations assumed by Ufret

in the contract guaranteed on March 30, 1911, and the terms of the guaranty.

Ufret bound himself to plant a certain number of *cuerdas* of sugar cane for the grinding season of 1912 and 1913; to repay with interest the $800 to be advanced him during the first year by the central for agricultural purposes, and to sell all his sugar cane to the central as well as that which he might purchase from other persons.

Appellant Acevedo guaranteed the payment of the $800 which under the contract was to be advanced by the central to Ufret during the first year thereof, with interest thereon. He guaranteed that Ufret would comply with the contract in all its parts and agreed to allow his guaranty to continue while the contract remained in force, or so long as Ufret owed anything on account thereof.

The only non-compliance with the contract by Ufret alleged in the complaint is his failure to pay the sum of $2,148.04, the balance accruing during the two years of the contract from the advance of the $800 referred to in the agreement of March 30, 1911, and of other sums for agricultural expenses.

Taking into consideration the obligations of Ufret and the guaranty of the appellant and bearing in mind the rules of law hereinbefore cited, we are forced to the conclusion that as to the money advanced, Acevedo guaranteed only the repayment of $800 with interest which under the contract was to be advanced to Ufret during the first year of the contract, for it is thus stated expressly in his contract of guaranty; and this amount was covered by his principal with the credit for $3,005.53 given him on February 6, 1912, for sugar cane delivered. That this is the correct construction is shown by the subsequent act of the central and Ufret in agreeing upon the amount to be advanced for financing the crop of 1912–13, therefore Acevedo did not guarantee the payment of the amounts advanced to his principal in excess of the $800. As regards the money advanced to his

principal, the appellant expressly limited his guaranty to the sum of $800 and interest; therefore, he cannot be held liable for other sums advanced which, on the other hand, cannot be considered as a consequence of the contract guaranteed by him; for although Ufret was under the obligation to grow and deliver sugar cane during the grinding seasons of 1912–13, it was not absolutely necessary that the central should advance more money than that expressly guaranteed by Acevedo to enable Ufret to fulfil that part of the contract.

Hence, the obligation assumed by Acevedo was to guarantee the payment of $800, with interest, and that Ufret would comply with the other conditions of the contract. The generality of the terms of the guaranty in regard to the obligations of Ufret beyond that of returning the $800, does not support the conclusion that as a consequence a greater sum than that should be advanced to Ufret and that the guarantor is under obligation to pay the excess.

For the foregoing reasons the judgment appealed from should be reversed as to Ramón Acevedo and another rendered dismissing the complaint as against him, without special imposition of costs.

                                            *Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Hutchison concurred.